IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

QUINTON PETERSON,

               Petitioner,

v.                                 CIVIL ACTION NO. 3:19-0126

DONALD F. AMES, Superintendent,
Mount Olive Correctional Complex,

               Respondent.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Petitioner Quinton Peterson's Objections to the Proposed Findings and Recommendation ("PF&R") issued by Magistrate Judge Cheryl A. Eifert on October 30, 2020. *Objections*, ECF No. 36; *PF&R*, ECF No. 33. The Court has undertaken a thorough review of the Objections and the PF&R, as well as pertinent material found elsewhere in the record. The relevant issues have been fully briefed and are ripe for resolution, and so the Court **ORDERS** this action reinstated to its active docket. For the reasons set forth below, the Court **DENIES** Petitioner's Objections and—consistent with the factual allegations outlined in this Memorandum Opinion and Order—**ADOPTS AND INCORPORATES HEREIN** the PF&R. The Court accordingly **GRANTS** Respondent Donald F. Ames' Motion to Dismiss and **DISMISSES WITHOUT PREJUDICE** Petitioner's Petition for a Writ of Habeas Corpus. *Mot. to Dismiss*, ECF No. 14; *Fed. Pet.*, ECF No. 1. Finally, the Court **DENIES** Petitioner's Application for a Certificate of Appealability and **ORDERS** this action removed from the docket. *See Application for Certificate of Appealability*, ECF No. 37.

## I. RELEVANT BACKGROUND

This case arises out of Petitioner's conviction for first-degree murder on August 12, 2008. *Order*, ECF No. 13-2, at 2. After reaching its verdict, the jury recommended a sentence of life imprisonment without mercy, and the Cabell County Circuit Court ("Circuit Court") accordingly sentenced Petitioner "to the West Virginia Penitentiary for a period of the rest of his natural life." *Id.* Soon after, the Circuit Court denied Petitioner's request for a new trial and appointed B. Luke Styer as Petitioner's appellate counsel. *Dkt. Sheet*, ECF No. 1-16, at 4. For nearly the next six years, Petitioner corresponded with Styer extensively and made multiple attempts to prompt him to file an appeal. *See*, *e.g.*, *Letter*, ECF No. 1-16, at 12–13. When these failed, Petitioner began a sporadic (but persistent) years-long attempt to have new counsel appointed to represent him. On April 28, 2014, the Circuit Court finally appointed Connor Robertson as Petitioner's new counsel "[i]n the interests of justice." *Order*, ECF No. 13-7, at 2.

Petitioner would wait another two years—until March 17, 2016—for his new counsel to file an appellate brief with the Supreme Court of Appeals of West Virginia. *Pet. Br.*, ECF No. 13-9, at 2. Petitioner raised eight assignments of error, the thrust of which related to evidence introduced at trial and evidence that had allegedly been improperly suppressed by prosecutors in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). On April 20, 2017, the Supreme Court of Appeals affirmed the Circuit Court's denial of Petitioner's motion for a new trial in a divided opinion. *State v. Peterson*, 799 S.E.2d 98 (W. Va. 2017). The majority reasoned that *Brady* did not provide an avenue for relief, as the allegedly suppressed evidence was "otherwise available to the defendant through the exercise of reasonable diligence" and did not provide a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *See State v. Youngblood*, 650 S.E.2d 119. 130 n.21 (W. Va. 2007); *State v.*

*Fortner*, 387 S.E.2d 812, 820 (W. Va. 1989). The majority also made short work of Petitioner's remaining arguments, which were subject to a plain error standard of review due to counsel's failure to raise objections at trial. *Peterson*, 799 S.E.2d at 107–13. Justice Davis dissented, arguing that "based upon the decision announced by the majority's opinion herein, due process is no longer a fundamental right." *Id.* at 117 (Davis, J., dissenting). On January 8, 2018, Petitioner's appeal came to an end with the United States Supreme Court's denial of his petition for a writ of certiorari. *Peterson v. West Virginia*, 138 S. Ct. 643, 644 (2018).

On January 16, 2018, Petitioner filed a petition for a writ of habeas corpus in the Circuit Court. *See Pet.*, ECF No. 13-15. Petitioner outlined five grounds for relief, and asked the Circuit Court to appoint an attorney to represent him in his habeas proceedings. *Id.* at 4–7. The Circuit Court appointed Todd Meadows as Petitioner's counsel on February 9, 2018. *Orders*, ECF No. 32-1, at 19. In the same order, the Circuit Court ordered Petitioner, through counsel, to "file with this Court an Amended Petition for Post-Conviction Habeas Corpus relief." *Id.* Counsel requested several extensions of time to file an amended petition, eventually doing so on September 6, 2019—over a year and a half after his initial appointment. *Dkt. Sheet*, ECF No. 32-1, at 2. Complicating this timeline is the fact that Petitioner filed a *pro se* motion for a new trial on June 27, 2018, which the "assigned prosecutor to the case was not made aware of . . . until . . . January 7, 2019." *Mot. for Extension of Time*, ECF No. 1-18, at 26. At a hearing scheduled for April 1, 2019, the Circuit Court ruled that the proper vehicle for Petitioner's *pro se* claims was a habeas petition rather than a motion for a new trial and accordingly denied Petitioner's motion. *Letter-form Resp.*, ECF No. 9, at 1. As noted *supra*, Petitioner, through counsel, submitted his Amended Petition on September 6, 2019. *Am. Pet.*, ECF No 32-1, at 133–90. In the Amended Petition, Petitioner moved for a new trial in light of many of the same *Brady* and evidentiary issues raised on his direct appeal. He added

new arguments as well, including for ineffective assistance of counsel and prosecutorial misconduct. *Id.* at 168–87. The State's response to the Amended Petition was due on or before February 14, 2020, and an omnibus hearing was scheduled for March 26, 2020. *Resp.*, ECF No. 42, at 1. Respondent later filed a "Motion to Extend Time to File Answer on Habeas," which pushed the hearing to May 13, 2020. *Status Report*, ECF No. 47, at 1.

While much of this state-court litigation continued, Petitioner filed the instant federal habeas petition on February 21, 2019. *Fed. Pet.*, at 9. The petition is quite extensive, including over 800 pages of attachments. Its claims generally overlap with those he has raised in state court, including his *Brady* claim and other questions of evidence, the quality of his representation, and alleged prosecutorial misconduct. *See generally* ECF 1-7, 1-8. He also argues that exhaustion requirements under 28 U.S.C. § 2254(b)(1)(A) should be excused on the basis of inordinate delay.

Pursuant to this Court's standing order, Petitioner's claims were referred to Magistrate Judge Cheryl A. Eifert for her preliminary findings of fact and recommendation for disposition. She issued the PF&R on October 30, 2019, and recommended that the Court not excuse Petitioner's exhaustion requirement. *PF&R*, at 1. At the same time, however, she cautioned that "[s]hould delay in consideration of Peterson's habeas petition continue to extend, or if the State proves to be unresponsive to the amended petition, Peterson may be able to return to federal court and convincingly argue that exhaustion should be excused." *PF&R*, at 37. Petitioner timely filed Objections by November 20, 2019, and argued, *inter alia*, that continuing delays in his state court habeas proceedings warranted excusing exhaustion. "Troubled by the persistent delays evident in Petitioner's direct appeal and state habeas proceedings," the Court directed Respondent to submit several status reports clarifying whether Petitioner's state habeas proceedings were proceeding

apace. *Order*, ECF No. 43. As has already been noted, the next significant deadline in this matter is petitioner's omnibus hearing scheduled for May 13, 2020.

## II. STANDARD OF REVIEW

Where—as here—a party is proceeding *pro se*, the Court must liberally construe his pleadings and objections. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The bounds of a liberal construction are not unlimited, however, and the Court is not free to "construct [Petitioner's] legal arguments for him." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

More broadly, in reviewing objections to a PF&R the Court must conduct a *de novo* review of those portions of the Magistrate Judge's findings "to which objection is made." 28 U.S.C. § 636(b)(1)(C). Conversely, the Court is not obligated to conduct a review of factual and legal conclusions to which a party does *not* object. *Thomas v. Arn,* 474 U.S. 140, 150 (1985). Nor is the Court obliged to afford *de novo* review to "general and conclusory" objections; rather, objections must raise specific errors in the PF&R. *McPherson v. Astrue*, 605 F. Supp. 2d 744, 749 (S.D.W. Va. 2009). This makes sense, inasmuch as any other approach would "prevent[] the district court from focusing on disputed issues" and would "render[] the initial referral to the magistrate judge useless." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). Of course, all this aside, the Court still possesses the wide discretion to "accept, reject, or modify, in whole or in part, the findings or recommendations" in the PF&R. 28 U.S.C. § 636(b)(1)(C). With these broad standards in mind, the Court begins its review of Petitioner's Objections.

## III. DISCUSSION

Petitioner has divided his Objections into four "General Factual Objections" and four "Legal Error Objections." *See Objections*, at 1–17. The Court will address each particularized

objection in turn. After having done so, the Court will consider whether Petitioner is entitled to a Certificate of Appealability.

### A. Factual Objections

#### 1. Source of Exculpatory Statement

Petitioner first objects to Magistrate Judge Eifert's references to a "transcript" of a police interview of Erin Stolze, who had allegedly provided exculpatory information to the police before Petitioner's trial. *See PF&R*, at 6. Petitioner argues that no "recording or transcript of the police interview" exists, and that his attorney instead learned of the exculpatory statements by contacting Ms. Stolze directly. *See Mot. for New Trial*, ECF No. 13-5, at 32. While it is not the Court's role to determine whether this is true or false at this stage of Petitioner's habeas proceedings, counsel's Motion for a New Trial—which the PF&R relies upon—only states that he had "taken a statement" from Ms. Stolze that contradicted prior unfavorable testimony. *Id.* No transcript is referenced in the Motion. *See id.* The Court therefore credits Petitioner's objection, and reviews the PF&R with this in mind.

#### 2. Time Spent Pursuing a New Trial

Petitioner's next objection is essentially that the PF&R mischaracterizes counsel's effort in pursuing a new trial as lasting "from 2009 until . . . 2013." *PF&R*, at 30. Instead, he argues that he filed his *pro se* Motion for a New Trial in 2009 and that counsel did not do the same until 2012. *Objections*, at 2. Petitioner is again correct, *see Mot. for New Trial*, at 32, and the Court takes this into account in considering his other objections.

#### 3. Access to Donovan Wade's Statement

Petitioner also objects to the PF&R's suggestion that he was "provided the transcript of Donovan Wade's 2007 police interview *prior* to trial." *Objections*, at 3 (emphasis in original).

Once again, the Court cannot determine from this record whether this is actually the case. Nevertheless, Magistrate Judge Eifert relied on a portion of his Amended Petition that does state the transcript was "delivered *at* trial." *Am. Pet.*, at 150. With this in mind—and with no citation in the PF&R suggesting otherwise—the Court accepts as true Petitioner's version of events.

### 4.  Omissions from "Federal Procedural Background"

In contrast to his first three objections, Petitioner's final factual objection is as brief as it is conclusory. Essentially, Petitioner objects to Magistrate Judge Eifert's purported failure "to mention or consider my factual assertions that support why review here and now is necessary." *Objections*, at 4. The only particularized omissions he points to are his claims that "his years long 'delay' was an 'unconstitutional due process violation' itself and that his 'confinement is a miscarriage of justice.'" *Id.* These are not facts; they are conclusions. A magistrate judge is under no obligation to adopt each and every piece of rhetoric a petitioner relies on, and so the Court denies Petitioner's objection.

## B.  Legal Objections

### 1.  Decision Not to Excuse Exhaustion

Petitioner's first "legal" objection stems directly from Magistrate Judge Eifert's recommendation that exhaustion not be excused. *Objections*, at 4–8. Petitioner relies on varied citations to case law and the record, but his argument is really quite straightforward: that the delay in his state proceedings has been inordinate and that exhaustion should be excused. *Id.* Petitioner is entitled to a thorough *de novo* review of his exhaustion argument, which the court will consider in parts.

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death

Penalty Act of 1996." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). "[T]he basic structure of federal habeas jurisdiction" outlined in Section 2254 is "designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." *Id.* at 103. In recognition of this jurisdictional preference, Section 2254(b)(1)(A) provides that a state prisoner must have "exhausted the remedies available in the courts of the State" before filing a petition for habeas corpus in federal court. 28 U.S.C. § 2254(b)(1)(A). This exhaustion requirement is not jurisdictional, but is rather "rooted in considerations of federal-state comity." *Preiser v. Rodriguez*, 411 U.S. 475, 491 (1973). Nevertheless, the United States Supreme Court "has encouraged a 'rigorously enforced total exhaustion rule' to 'protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings' and to facilitate more comprehensive development of factual records before they are presented to the federal courts for review." *Plymail v. Mirandy*, No. 3:14-6201, 2017 WL 2017 WL 4280676, at *7 (S.D.W. Va. Sept. 27, 2017) (quoting *Rose v. Lundy*, 455 U.S. 509, 518–19 (1982)). Despite this call for rigorous enforcement, 28 U.S.C. § 2254(b)(1)(B) permits a federal district court to excuse exhaustion if "there is an absence of available State corrective process or circumstances exist that render such process ineffective to protect the rights of the applicant."

Here, it is undisputed that Petitioner has not exhausted his state court remedies for all his claims. *PF&R*, at 27–28. The Court is therefore left to consider whether this is the sort of "extreme" case that warrants excusing state exhaustion. *See Brennan v. McGraw*, No. 2:12-CV-01306, 2012 WL 3656487, at *3 (S.D.W. Va. Aug. 24, 2012). Pertinent to this case, "an inordinate and unjustified delay may excuse the petitioner from the traditional statutory requirement of exhaustion." *Walkup v. Haines*, No. Civ.A 5:04-1283, 2005 WL 2428163, at *3 (S.D.W. Va. Sept. 30, 2005). "In considering whether a delay is inordinate and unjustified such that exhaustion

should be excused, courts look to several factors including: (1) the length of the delay . . . , (2) the significance of any action that has been taken in state court . . . , and (3) the party responsible for the complained-of delay . . . ."[1] *Plymail*, 2017 WL 4280676, at *7 (internal citations omitted). The Court will review each factor in turn.

### i. Length of the Delay

The Court first considers the length of the delay that has accompanied Petitioner's state proceedings. As noted *supra*, Petitioner was convicted on August 12, 2008. It took nearly ten years for the United States Supreme Court to deny his petition for a writ of certiorari and thereby finalize his conviction. Although there is no "talismanic number of years or months" that renders a delay inordinate, *Coe v. Thurman*, 922 F.2d 528, 531 (9th Cir. 1990), the length of the delay in this case—almost a decade—is striking, and undoubtedly "inordinate" under any reasonable definition of the term. *See*, *e.g.*, *Lee v. Stickman,* 357 F.3d 338, 343–44 (3d Cir. 2004) (eight-year delay warranted excusing exhaustion); *Turner v. Bagley,* 401 F.3d 718, 726–27 (6th Cir.2004) (eleven-year delay warranted excusing exhaustion); *Ward v. Freeman*, No. 94-6424, 1995 WL 48002, at *1–2 (4th Cir. Feb. 8, 1995) (per curiam) (fifteen-year delay warranted excusing exhaustion); *Story v. Kindt,* 26 F.3d 402, 405–06 (3d Cir.1994) (eleven-year delay warranted excusing exhaustion); *Workman v. Tate,* 957 F.2d 1339, 1344 (6th Cir. 1992) (three-year delay warranted excusing exhaustion); *Simmons v. Reynolds,* 898 F.2d 865, 868 (2d Cir.1990) (six-year delay warranted excusing exhaustion); *Mathis v. Hood,* 851 F.2d 612, 614–15 (2d Cir.1988) (six-year delay

---

[1] Importantly, the Court will not look to the factors outlined in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), as Petitioner urges in his Objections. The *Barker* factors are "undoubtedly the appropriate standard for analysis of Petitioner's substantive claim that the delay in his appeal amounted to a due process violation," *Plymail,* 2017 WL 4280676, at *7 n.3, but it is premature to apply *Barker* in considering whether exhaustion should be excused. Despite Petitioner's arguments to the contrary, this benefits his position by relieving him of the burden of demonstrating a due process violation as a prerequisite to excusing exhaustion. *See id.*

warranted excusing exhaustion). If the Court's analysis were to end here, the first factor would weigh in favor of excusing exhaustion.

Yet despite the inordinate length of time expended on Petitioner's direct appeal, the circumstances here are not so simple. Petitioner's direct appeal concluded in 2018, meaning that any attendant delays in that appeal are no longer part of the Court's consideration. *See, e.g.*, *Monegain v. Carlton*, 576 F. App'x 598, 602 (7th Cir. 2014) (reasoning that "because the delay has come to a close, the comity concerns underlying the exhaustion requirement compel the federal courts to allow the state litigation to run its course"). Instead, the Court must look to the status of Petitioner's state habeas proceedings. Petitioner's habeas case began approximately twenty-eight months ago—not an insubstantial amount of time by any measure. Yet as the PF&R accurately notes, this amount of time is generally not enough to constitute an inordinate delay. *See, e.g.*, *Walkup*, 2005 WL 2428163, at *3 (three-year delay not *per se* unreasonable); *Brennan*, 2012 WL 3656487, at *3 (delay of less than three years not sufficient to excuse exhaustion). This factor therefore weighs against excusing exhaustion.

### ii. Significance of Action in State Court

The Court next considers the progress that has already been made in state court. Where there is "no indication that a state court case is achieving meaningful progress or nearing disposition, then the federal court should excuse exhaustion." *Plymail*, 2017 WL 4280676, at *9 (citing *Burkett v. Cunningham*, 826 F.2d 1208, 1218 (3d Cir. 1987)). Conversely, "[w]here a state court case is proceeding normally, a federal court should not excuse exhaustion even if the case's progress in state court is slow." *Id.* Of particular relevance here, "a federal court should 'stay its hand' if there is evidence that a state court action is proceeding normally or has been 'reactivated.'" *Id.* (quoting *Walker v. Vaughn*, 53 F.3d 609, 614 (3d Cir. 1995)).

-10-

To say that Petitioner's state habeas case has not proceeded expeditiously would be a manifest understatement. His case has been replete with requests for extensions by the State and missed deadlines. Some of these delays no doubt owe to Petitioner's own litigation decisions—electing to file a simultaneous motion for a new trial with his Amended Petition among them—but others fall squarely on the State's shoulders. For example, as Magistrate Judge Eifert pointed out in her PF&R, there exists "an inexplicable six-month gap between the time that Peterson filed the motion for a new trial and the time that the State became aware of the motion." *PF&R*, at 35.

Perhaps most concerning for the purposes of resolving the instant objection, Petitioner claims that Respondent has continued to miss deadlines to respond to his Amended Petition. *Objections*, at 7. The Court directed Respondent to explain any missed deadlines, which counsel represented was the result of a misunderstanding. [2] *Resp.*, at 1. Unsatisfying though this explanation may be, Respondent has since reaffirmed that the State is ready to proceed with an omnibus hearing on Petitioner's Amended Petition on May 13, 2020. *Second Resp.*, ECF No. 49, at 1–2. Given all this, Petitioner's state habeas proceedings appear to have reactivated and real progress appears to have been made. An Amended Petition has been field, counsel has been appointed, and a hearing is on the immediate horizon. This represents significant progress, *see Plymail*, 2017 WL 4280676, at *10 (finding factor weighed in Petitioner's favor where case had "been pending for nearly five years, no amended petition ha[d] been filed on Petitioner's behalf, court-appointed attorneys ha[d] missed several court deadlines to file an amended petition, and the

---

[2] Specifically, counsel represented that "[t]here was previously a misimpression on the part of the Cabell County Prosecuting Attorney's Office that because the West Virginia Attorney General's Office had undertaken the response on behalf of [Petitioner] and the State of West Virginia" in these federal proceedings, "it would also respond to the [Amended Petition] Pending before the Circuit Court of Cabell County." *Resp.*, ECF No. 42, at 1. Respondent further explained that "[t]his misunderstanding has now been remedied," and that "[a]n omnibus hearing has been scheduled for March 26, 2020." *Id.*

Circuit Court ha[d] not held any hearing"), and in such circumstances the "comity concerns underlying the exhaustion requirement compel the federal courts to allow the state litigation to run its course," *Vreeland v. Davis*, 543 F. App'x 739, 742 (10th Cir. 2013). This factor therefore also weighs against excusing exhaustion.

### iii. Responsible Party

Finally, the Court considers whether "the fault for any delay found to be inordinate . . . lie[s] with the State and not with Petitioner." *Plymail*, 2017 WL 4280676, at *10. "To excuse the exhaustion requirement . . . the delay must be attributable to the state's procedures . . . and not attributable to petitioner's own actions." *Walkup*, 2005 WL 2428163, at *3. As an initial matter, the Court does not discount the role the State has played in delaying the state proceedings. While it is impossible to calculate with mathematical precision, it seems clear that a significant portion— if not a majority—of the delay in the Cabell County Circuit Court has resulted from Respondent's own lack of diligence in pursuing this case. Nevertheless, Petitioner cannot satisfy his burden on this factor as "some of the delay" is owed to his own decision to file a motion for a new trial based on an alleged *Brady* violation. *Matthews v. Evatt*, 51 F.3d 267, 1995 WL 149027, at *1 n.1 (4th Cir. 1995) (per curiam).

Like Magistrate Judge Eifert, this Court is not ignorant of the possibility that delays could resume at a future point in Petitioner's state proceedings. This is a particularly credible scenario given that Petitioner's case remains pending in the same court that has already allowed proceedings to drag on for over two years and against the same Respondent that has made a habit of missing deadlines and requesting extensions. So, to be absolutely clear: should delays persist in Petitioner's state habeas proceedings for any inordinate period of time, the Court will again entertain the argument that exhaustion of state proceedings should be excused. Yet, for now, the Court

-12-

concludes "the need for a rule encouraging exhaustion of all federal claims" outweighs Petitioner's arguments in favor of excusing exhaustion. *Rose*, 455 U.S. at 519. Petitioner's first legal objection is therefore denied.

### 2.   Failure to Consider "Actual Innocence"

Petitioner's next objection is that Magistrate Judge Eifert did not consider his claims of "actual innocence" in her PF&R. *Objections*, at 8–9. This much is true, and given Petitioner's extensive briefing of his claims for actual innocence, *see Traverse*, ECF No. 26-1, at 20–36, the Court will review his arguments *de novo*. At core, Petitioner contends that several new pieces of evidence will allow him to demonstrate his actual innocence. *Id*. This evidence, in turn, can act as a "'gateway' through which [he] can pass to have his otherwise unexhausted claims considered on their merits." *Id.* at 22. Yet the Court cannot consider the strength or weakness of this new evidence, because Petitioner fundamentally misapprehends the relationship between the exhaustion requirement and the actual innocence exception.

At the outset, the Court agrees that federal habeas petitioners in state custody may present evidence of actual innocence to act as a "gateway" to have their procedurally-barred constitutional claims considered on the merits. *See Herrera v. Collins*, 506 U.S. 390, 404 (1993). This "gateway" exception to non-exhaustion is, in turn, a product of the doctrine of procedural default. Procedural default applies when a "petitioner fails to exhaust available state remedies *and* 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (quoting *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)) (emphasis added). Barring a showing of (1) cause and prejudice or (2) a fundamental miscarriage of justice, a federal district court may not entertain procedurally-defaulted claims. *See Harris v. Reed*, 489 U.S. 255, 262

(1989). Claims of "actual innocence" fall within the "fundamental miscarriage of justice" exception, *Schlup v. Delo*, 513 U.S. 298, 299 (1995), but are narrow in scope and "should not be granted casually," *Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir. 1998).

This discourse on the doctrine of procedural default has a point. While Petitioner could raise claims for actual innocence if his claims were procedurally defaulted, exhaustion and procedural default are analytically distinct legal doctrines. Whereas exhaustion applies "only to those [state] remedies still available at the time of the federal petition," *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982), procedural default—by definition—applies only to those claims where relief is "procedurally barred under state law," *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000). The Court has already concluded that state habeas relief is *not* unavailable to Petitioner, meaning that the doctrine of procedural default and its attendant exceptions are entirely inapplicable to the case at hand. *See, e.g.*, *Merrifield v. Ballard*, No. 3:16-12280, 2017 WL 9533232, at *6 n.4 (S.D.W. Va. May 11, 2017) (reasoning claims were neither exhausted nor procedurally defaulted where "Petitioner's *habeas* claims [had] not been presented to the State's highest court and there [was] no indication that the claims would be procedurally barred under state law if Petitioner attempted to present them to the state court"), *report and recommendation adopted*, No. 3:16-12280, 2017 WL 2984071, at *2 (S.D.W. Va. July 13, 2017). Petitioner is free to make the same arguments to the Circuit Court as he has made to this Court regarding his actual innocence, but the existence of available state court remedies means that the exceptions to procedural default he has pointed to here have no bearing on his case. The Court accordingly denies Petitioner's objection.

### 3. Failure to Make Findings Regarding an Evidentiary Hearing and Discovery

Petitioner's third objection focuses on the PF&R's failure to address his requests for an evidentiary hearing and "some discovery." *See Objections*, at 10. As above, the Court will consider

Petitioner's request for an evidentiary hearing *de novo* as the PF&R does not discuss it. As above, however, Petitioner's argument fails for the simple reason that his claims are not procedurally defaulted.

Under 28 U.S.C. § 2254(e)(2), federal courts are precluded from holding an evidentiary hearing in a § 2254 proceeding "if the applicant has failed to develop the factual basis of a claim in State court." Outside this category of cases, "the decision to grant . . . a hearing rests in the discretion of the district court." *Schriro v. Landrigan*, 550 U.S. 465, 468 (2007). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id.* at 474. Simply put, no amount of information solicited at an evidentiary hearing could entitle Petitioner to relief because his claims are neither exhausted nor procedurally defaulted. Absent the Court excusing exhaustion (which it has not) or Petitioner's claims falling into procedural default (which they have not), his claims cannot succeed in a federal courtroom. An evidentiary hearing would be a meaningless endeavor, and so the Court denies Petitioner's third objection.

### 4.   Failure to Consider "Cause and Prejudice" Test

Petitioner's final objection is that Magistrate Judge Eifert did not consider his claims under the "cause and prejudice" test. *Objections*, at 11–17. While this is once again true, Petitioner's objection will once again fail. As noted, a federal habeas petitioner can circumvent procedural default in two scenarios: where he is able to demonstrate a fundamental miscarriage of justice, or where he is able to show "'cause' for the default and 'prejudice attributable thereto.'" *Harris*, 489 U.S. at 262 (quoting *Murray v. Carrier*, 477 U.S. 478, 485 (1986)). Yet as has been established at length, Petitioner's claims are not procedurally defaulted. The Court has already concluded that

his state habeas proceedings have reactivated, and Petitioner has pointed to no procedural bar that would prevent review of his claims in the Circuit Court. The Court therefore denies Petitioner's final objection in light of his failure to demonstrate that exhaustion should be excused or that his claims are procedurally defaulted.

### C. Certificate of Appealability

As a final matter, the Court has considered whether to grant a certificate of appealability pursuant to 28 U.S.C. § 2253(c). *See Application for Certificate of Appealability*, at 1. A certificate will not be granted unless there is "a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this Court is debatable or wrong and that any dispositive procedural ruling is likewise debatable. *Miller-El v. Cockrell*, 537 U.S. 322, 336–38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683–84 (4th Cir. 2001). The Court concludes that the governing standard is not satisfied here, and accordingly must deny Petitioner a certificate of appealability.

### IV. CONCLUSION

As noted earlier, the Court **ORDERS** this action reinstated on its active docket. For the foregoing reasons, the Court **DENIES** Petitioner's Objections, ECF No. 36, and—consistent with this Memorandum Opinion and Order—**ADOPTS AND INCORPORATES HEREIN** the PF&R, ECF No. 33. The Court accordingly **GRANTS** Respondent's Motion to Dismiss, ECF No. 14, and **DIMSISSES WITHOUT PREJUDICE** Petitioner's Petition for a Writ of Habeas Corpus, ECF No. 1. Finally, the Court **DENIES** Petitioner's Application for a Certificate of Appealability, ECF No. 37, and **ORDERS** this action removed from its docket.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to

Magistrate Judge Eifert, counsel of record, and any unrepresented parties.

ENTER:        May 4, 2020

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE